NOT DESIGNATED FOR PUBLICATION

No. 120,596

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES GULIE HENNING,
*Appellant*.

MEMORANDUM OPINION

Appeal from Geary District Court; BENJAMIN J. SEXTON, judge. Opinion filed April 10, 2020. Affirmed and remanded with directions.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Michelle L. Brown*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., HILL and STANDRIDGE, JJ.

PER CURIAM: James Gulie Henning appeals the five life sentences he received for his sex crimes. The court imposed these sentences on remand from this court after a prior panel reversed five of his ten convictions as multiplicitous. His sentences arise from the application of Jessica's Law, meaning that Henning is ineligible for release until he has served 25 years in prison. But since two of his life sentences are consecutive, he must serve at least 50 years before he can be released.

He raises four errors. Henning contends:

1

- The sentencing court abused its discretion when it denied his motion for a dispositional departure sentence;
- it was abusive to order him to serve two of the life sentences consecutively, making him serve at least 50 years in prison;
- since he did not kill anyone, this sentence violates the United States and Kansas Constitutions; and
- the district court's journal entry must be corrected.

Based on our review of the record, we hold the court did not abuse its discretion when it denied Henning's motion to depart, nor when it made two of the five life sentences consecutive. And his sentences do not violate either the federal or state constitutions. As a final point, because the State concedes the journal entry errors, we will remand the case with directions to the district court to correct those. Otherwise, we affirm.

*A police examination of Henning's computer led to his arrest.*

When a police officer was examining Henning's computer for child pornography, the officer discovered images of Henning's young daughter. Henning initially cooperated with the investigation. His admissions led to several other charges. He was arrested and charged with 11 off-grid felony counts of sex-related crimes, many stemming from conduct with his 8-year-old daughter. He waived his right to a jury trial and—following an October 2015 bench trial—the district court convicted Henning of 10 of the crimes. Henning's convictions included one count of rape, three counts of aggravated criminal sodomy with a child, two counts of aggravated indecent liberties with a child, and four counts of sexual exploitation of a child. The district court sentenced Henning under Jessica's Law to 10 life sentences, with two sentences to run consecutive to each other and the remainder to run concurrently. *State v. Henning*, No. 115,832, 2017 WL

3837224, at *1 (Kan. App. 2017) (unpublished opinion), *rev. denied* 308 Kan. 1598 (2018).

In his direct appeal, Henning successfully argued several of his convictions were multiplicitous. The panel found five of Henning's eight challenged convictions were multiplicitous and vacated them. That panel remanded for sentencing on his convictions for one count of aggravated indecent liberties with a child, one count of aggravated criminal sodomy with a child, and one count of sexual exploitation of a child. Henning did not challenge his convictions for rape and another charge of aggravated criminal sodomy. 2017 WL 3837224, at *8-9.

Henning had also raised in his direct appeal other issues about his sentencing. He successfully argued that the district court erred by weighing aggravating factors against mitigating factors in denying his motion for a departure. The panel vacated the district court's denial of his motion and remanded the case to the district court for proceedings consistent with K.S.A. 2016 Supp. 21-6627(d), as construed in *State v. Jolly*, 301 Kan. 313, 324-25, 342 P.3d 935 (2015). In view of the remand for resentencing and reconsideration of a durational departure, it did not address Henning's issue on whether the district court abused its discretion by imposing two life sentences consecutively. 2017 WL 3837224, at *1.

*The court imposes a new sentence after remand.*

At the resentencing hearing, the district court took up Henning's request for a dispositional departure. He argued there were substantial and compelling reasons for the district court to grant his motion to depart from a mandatory life sentence for each of his convictions. Instead, he asked for an on-grid determinate sentence of 155 months. He cited several personal and social reasons for mercy:

3

- His age;

- his lack of criminal history;

- the availability of sex offender treatment in prison;

- the possibility of civil commitment after he completed his sentence;

- the requirement that he register as a sex offender for life;

- his 19 years of military service;

- his diagnosis of post-traumatic stress disorder;

- the conclusion by a psychiatric evaluator that treatment would be more effective if he had some hope of reintegration;

- his cooperation during the criminal investigation;

- his agreement to be tried by the court;

- his time already served in prison;

- his good behavior while incarcerated;

- his prison employment record; and

- his tithing and leadership with his church and with a veterans' group.

Henning claimed that a life sentence under Jessica's Law was unjust and a violation of his constitutional right against cruel and unusual punishment. He argued that because he did not commit a homicide, a grid sentence would be more appropriate. He argued that the primary reason for granting a dispositional departure was to give him hope of rejoining society and an incentive to better himself. Henning's attorney also argued in the alternative that if the court denied Henning a departure, his sentences should be served concurrently.

At this hearing, Henning acknowledged what he did was wrong, but he argued that he did not kill anyone or "harm anybody, physically." He argued, "[i]f there's no chance of me ever getting out of prison, what's the point of doing anything?"

In the State's response, it cited *Jolly's* requirement that the sentencing court cannot weigh mitigating and aggravating circumstances against each other. For its part, the State argued that Henning's lack of criminal history by itself was not substantial and compelling. The State pointed out several points in Henning's psychiatric evaluation that did not support mitigation—such as his diagnosis as a pedophile and his claims that his 8-year-old daughter was the sexual aggressor.

The State also noted that the record did not support Henning was as cooperative with the investigation about his crimes against his daughter. The State argued that Henning's time served, statutory requirements such as registration as a sex offender, the possibility of civil commitment, and his adherence to rules while incarcerated should not be considered mitigating factors because "he should be doing what he's supposed to do." The State noted Henning's actions were not reckless, accidental, or an isolated incident. They were purposeful, continuous, and took time and effort to set up and execute. Finally, the State requested that the district court deny Henning's request for a departure and sentence him to two consecutive life sentences.

The district court noted it was Henning's burden to show substantial and compelling reasons to justify a dispositional departure. The court defined substantial as "real . . . and . . . something of substance," and compelling as something that "forced [the court] to go beyond the ordinary sentence." The district court specified that it looked only to Henning's cited mitigating factors and the State's argument on those factors. After listing Henning's factors, the district court found they were not substantial and compelling, and there was "no reason to go beyond the ordinary sentence, as prescribed by law."

The court denied Henning's motion for a departure sentence and then sentenced him to hard 25 life sentences for each of his five affirmed convictions:

- One count of aggravated indecent liberties with a child;
- two counts of aggravated criminal sodomy;
- one count of sexual exploitation of a child; and
- one count of rape.

The district court ordered the life sentences for aggravated indecent liberties with a child and one count of aggravated criminal sodomy be served consecutively, and the remaining three life sentences were to run concurrent with the life sentence for aggravated indecent liberties with a child.

We will begin our analysis with Henning's two claims of abuse of discretion before we address his arguments on constitutional violations.

*We find no abuse of discretion in denying his motion for a departure sentence.*

Basically, Henning contends the court was wrong when it concluded he had not shown substantial and compelling reasons to depart in sentencing. The State, of course, contends the court was right. We review such questions with our usual inquiries into reasonableness and legal or factual error. In other words, a judicial action constitutes an abuse of discretion if:

- No reasonable person would take the view adopted by the trial court;
- the action is based on an error of law; or
- the action is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

Under Jessica's Law, the presumptive sentence for a defendant who is 18 years or older and convicted of rape, aggravated criminal sodomy of a child, sexual exploitation

of a child, or aggravated indecent liberties with a child is life in prison with no possibility of parole for 25 years. K.S.A. 2016 Supp. 21-6627(a)(1)(B), (C), (D), (F). The district court must impose the presumptive sentence "unless the judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure." K.S.A. 2016 Supp. 21-6627(d)(1).

When considering a departure from a Jessica's Law sentence, a sentencing court must:

- First, review the mitigating circumstances without any attempt to weigh them against any aggravating circumstances;
- then, in considering the facts of the case, the court must determine whether the mitigating circumstances rise to the level of substantial and compelling reasons to depart from the otherwise mandatory sentence; and
- finally, if the sentencing court finds substantial and compelling reasons support a departure to a sentence within the appropriate sentencing gridlines, that court must state on the record those substantial and compelling reasons. See *Jolly*, 301 Kan. at 324; K.S.A. 2016 Supp. 21-6627(d).

Our review of the record reveals that Henning's claim that the district court disregarded his mitigating factors is contradicted by the record. The transcript shows that—no matter if the State specifically disagreed with all the factors Henning presented—the district court followed the process outlined in *Jolly*. The district court considered Henning's factors, listed them on the record, and found they did not rise to the level of being substantial and compelling to justify a departure from the mandatory sentence. In so concluding, the district court did not need to move to the third step under the *Jolly* analysis. See 301 Kan. at 324.

When a defendant does not contend the district court made an error of law or fact, the appellate court's standard of review is whether no reasonable person would have agreed with the judge's decision in light of the factors found by the judge. *State v. Florentin*, 297 Kan. 594, 599, 303 P.3d 263 (2013), *disapproved of on other grounds by Jolly*, 301 Kan. at 313. Henning does not argue that the district court made a mistake of law or fact. He argues that the district court was unreasonable for failing to find his mitigating circumstances were substantial and compelling. But Henning's disagreement with the sentencing court does not show that no other reasonable person would have agreed with its decision to deny his request for a dispositional departure. An acknowledgement of wrongdoing is not the same as remorse. Henning fails to meet his burden. Accordingly, the district court's denial of Henning's motion for a dispositional departure is affirmed.

*We find no abuse of discretion in imposing consecutive sentences.*

Henning contends that the district court erred by imposing two consecutive hard 25 life sentences because he would not be eligible for parole until he was almost 90 years old. He argues his sentences amount to a death sentence, which is not warranted for his crimes because he did not kill anyone. The State argues the district court did not abuse its discretion and Henning's consecutive sentences should be affirmed.

This court reviews a district court's decision to impose sentences consecutively for an abuse of discretion. *State v. Ayers*, 309 Kan. 162, 165, 432 P.3d 663 (2019). Again, we review for reasonableness and errors of fact or law. *Marshall*, 303 Kan. at 445.

Henning claims in support:

- Even if his mitigating factors did not warrant a departure, they did warrant concurrent sentences;

8

- neither his daughter nor anyone in his family offered victim impact statements at his resentencing; and
- the district court did not engage in the "better practice" of providing specific reasons for ordering consecutive sentences, citing *State v. Frecks*, 294 Kan. 738, 742, 280 P.3d 217 (2012).

Henning argues that because he will be of an advanced age when he is eligible for parole, his sentence is practically a death sentence. He also argues that while he "admittedly did inexplicable things in this case that damaged [his daughter] and the rest of [his] family, there is no indication in the record that the people most affected want [him] to have what amounts to a death sentence."

Henning contrasts his case with the facts in *Frecks*, another child sex crime case. But in *Frecks*, there was more than one victim and they were from different families. Parents testified about the impact the crimes had on their children, and the court imposed consecutive sentences. The Supreme Court upheld the sentence, despite saying it is a better practice for the court to explain why consecutive sentences are imposed. 294 Kan. at 742. Because there were no victim impact statements here, consecutive sentences are too harsh.

But sentences serve legitimate purposes beyond mere incapacitation of the defendant. In *Ayers*, the Kansas Supreme Court noted that "[r]etribution is the oldest justification for sentencing and an important aspect—it is 'a merited response to the actor's deed . . . expressing moral reprobation of the actor for the wrong.'" 309 Kan. at 165. And the Kansas Supreme Court has upheld sentences like Henning's. Again, for example, in *Ayers*, the court affirmed "the district court's imposition of on-grid sentences consecutive to Ayers' sentence of life imprisonment without the possibility of parole." 309 Kan. at 166. The court said that the consecutive sentences—after a life without parole sentence—fulfilled the retributive aspect of sentencing. See 309 Kan. at 165. The

court also noted that it is common to sentence "defendants to terms of imprisonment they are unlikely to serve." 309 Kan. at 166.

At resentencing, the district court supported its decision to impose two of Henning's sentences consecutive to each other by finding his offenses were sexually motivated and his victim was 8 years old at the time. Henning does not argue that the district court made a mistake of law or fact. He argues that the district court was unreasonable for ordering two of his hard 25 life sentences to run consecutive to each other. Henning's disagreement with the sentencing court does not show that no other reasonable person would have agreed it was appropriate to order he serve two consecutive hard 25 life sentences. On appeal, we will not substitute our judgment for the sentencing court's judgment. Henning fails to meet his burden to show the district court was unreasonable and his consecutive sentences are affirmed.

*We find no federal or state constitutional violation in his sentence.*

Next, Henning reiterates his argument and claims a life sentence is cruel and unusual punishment "in the instance of a nonhomicide offense." He further argues the district court erred by not finding a life sentence in a "nonhomicide offense to be cruel and/or unusual punishment." The State contends the district court did not err and argues it is long-established that a life sentence—even for a nonviolent property crime—can be constitutional. The State cites *Harmelin v. Michigan*, 501 U.S. 957, 962-64, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991), when the court upheld a sentence of life without possibility of parole for the defendant convicted of possessing more than 650 grams of cocaine, although it was his first felony offense.

Henning's challenge to his life sentences necessarily questions the constitutionality of Jessica's Law—K.S.A. 2016 Supp. 21-6627—as applied to offenders in the same category as himself. A categorical rather than case-specific challenge to

whether a sentencing scheme constitutes cruel and unusual punishment may be raised in a direct appeal as it does not require review of factual findings. *State v. Mossman*, 294 Kan. 901, Syl. ¶ 8, 281 P.3d 153 (2012). But in *State v. Huerta*, 291 Kan. 831, 839-40, 247 P.3d 1043 (2011), the court advised that an appellate court lacks jurisdiction to consider on direct appeal a claim that a defendant's individual presumptive sentence is unconstitutional but may consider a challenge to the facial constitutionality to a sentencing scheme. This court applies an unlimited standard of review to Henning's categorical challenge to his sentence. See *Mossman*, 294 Kan. at 925.

Henning acknowledges the Kansas Supreme Court has already decided this issue against him in *State v. Ruggles*, 297 Kan. 675, 304 P.3d 338 (2013). In *Ruggles*, our Supreme Court found that the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution did not categorically prohibit a hard 25 life sentence from being imposed for an adult offender convicted of the crime of indecent liberties with a child by soliciting a child to engage in lewd fondling or touching in violation of K.S.A. 21-3504(a)(3)(B). 297 Kan. at 688. Another panel of this court has also addressed this issue. In *State v. Gonzalez*, No. 107,375, 2013 WL 5610146, at *15 (Kan. App. 2013) (unpublished opinion), the court held that based on the court's rationale in *Ruggles,* "we conclude that the Eighth Amendment does not categorically prohibit a hard 25 life sentence from being imposed in the case of an adult offender convicted of the crime of aggravated indecent liberties with a child . . . and aggravated criminal sodomy . . . ."

In *Ruggles*, the Kansas Supreme Court quoted from the United States Supreme Court decision in *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), for the proposition that life without parole is permissible for nonhomicide offenses, except those committed by children. 297 Kan. at 684. Similarly, the Kansas Supreme Court also noted that, while severe, a hard 25 life sentence for an adult offender is not an unconstitutional sentence for a nonhomicide offense:

11

"The sentence at issue here, a hard 25 life sentence, is a severe penalty but certainly not as severe as the death penalty or a life sentence without the possibility of parole—the only types of sentences that the United States Supreme Court has thus far found categorically disproportionate and, therefore, unconstitutional when imposed in certain contexts not applicable here. Pertinent to this case, the United States Supreme Court has held that a life sentence can be constitutionally imposed upon an adult offender guilty of committing a nonhomicide offense. [Citations omitted.]" *Ruggles*, 297 Kan. at 686.

State courts may not override the United States Supreme Court's interpretation of the United States Constitution. *State v. Lawson*, 296 Kan. 1084, 1089, 297 P.3d 1164 (2013). And this court is duty bound to follow Kansas Supreme Court precedent unless there is some indication that the Kansas Supreme Court is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). Henning does not provide any authority to show the Supreme Court is departing from its holding in *Ruggles* that a life sentence for a nonhomicide crime is not unconstitutional. Applying this doctrine, we must affirm Henning's life sentences.

*There is an agreement about some journal entry errors.*

Henning contends the district court improperly indicated on his journal entry of convictions that he had to submit to lifetime postrelease supervision on counts 1 and 2, rather than lifetime parole under counts 5, 9, and 11. He argues this was an error that should be corrected. The State concedes the errors under counts 1 and 2, and it agrees that the proper remedy is to vacate the "lifetime postrelease imposed."

We remand the matter to the district court to issue an amended journal entry. We affirm Henning's sentences.

Affirmed and remanded with directions.

12